UNITED FOOD AND COMMERCIAL WORKERS LOCAL 204, John LeGrand, Frank Sullivan, and Leon Person, individually and on behalf of all similarly situated individuals represented by United Food and Commercial Workers Local 204, Plaintiffs,

v.

HARRIS–TEETER SUPER MARKETS, INC., Ruddick Corporation, Alan T. Dickson, and Ruddick Corporation Savings and Protection Plan, Defendants.

No. C–C–88–426–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 19, 1989.

Jonathan R. Harkavy, Smith Patterson Follin Curtis James & Harkavy, Greensboro, Renee Bowser, Washington, D.C., and Michael G. Okun, Smith Patterson Follin Curtis James & Harkavy, Raleigh, N.C., for plaintiffs.

Robert B. Cordle and Irving M. Brenner, Smith Helms Mulliss & Moore, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on (1) Plaintiffs' Petition for Attorneys' Fees and Costs, filed May 26, 1989, and (2) Defendants' Petition for Attorneys' Fees, filed May 26, 1989.

Plaintiffs—a labor union and three individual unionized warehouse employees of Defendants—brought this lawsuit under the Employee Retirement Security Act of 1974, as amended, 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1988) ("ERISA"), seeking to have the individual unionized employees—and all others similarly situated—recognized as participants in an employee benefits 401(k) plan (the "Plan") that Defendants have set up, and currently administer, for their employees. Defendants, on the other hand, claimed that this action should be perceived as arising solely under the National Labor Relations Act ("NLRA"), 29 U.S.C.A. §§ 151–168 (West 1973 & Supp.1988), and should be seen as within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Defendants asked this Court to dismiss Plaintiffs' Complaint on the ground that this Court lacks subject matter jurisdiction over Plaintiffs' claims; Defendants asserted that the NLRA effectively preempts this sort of lawsuit because the NLRB, the administrative agency charged with enforcement of the NLRA, is the only appropriate body that can, and should, decide the issues raised in Plaintiffs' Complaint. Plaintiffs, on the other hand, contended that they are merely seeking to enforce their independent federal remedies under ERISA and are not seeking any relief related to collective bargaining or unfair labor practices or the NLRA.

In an Order filed in this case on March 28, 1989, 716 F.Supp. 1551, this Court decided that the federal district courts have subject matter jurisdiction under the applicable portion of ERISA, 29 U.S.C. § 1132, to entertain suits brought by individual unionized employees—not covered by a collective bargaining agreement—who have been excluded, because they are unionized employees, from participation in an employee benefits plan covered by ERISA and who are seeking to enforce their rights, if any, under the terms of the plan or to clarify their future rights, if any, under the terms of the plan.

Defendants also asserted that Plaintiffs' Complaint should be dismissed because it was allegedly filed beyond the time prescribed by the appropriate statute of limitations. This Court held in the March 28th Order that Plaintiffs' Complaint was filed in a timely fashion because it was filed within three years of the dates on which Plaintiffs' claims accrued.

Finally, Defendants sought to have the labor union dismissed as a plaintiff for lack of standing and moved, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against all Plaintiffs for filing a lawsuit purportedly without foundation in law or fact. This Court granted in part Defendants' Motion to Dismiss, dismissed the labor union as a plaintiff for lack of standing, and denied Defendants' Motion for Rule 11 Sanctions.

After this Court rendered its decision on Defendants' Motion to Dismiss, Defendants voluntarily allowed the unionized employees to participate in the Plan. Following this development, the parties stipulated that the controversy on the merits is now moot. On May 2, 1989, this Court entered an order—with the parties' explicit consent—dismissing with prejudice Plaintiffs' Complaint. This Court explicitly retained jurisdiction to enter further orders regarding attorneys' fees and costs.

Now, both sides have claimed "victory," and they both want their attorneys' fees and costs.

Section 502(g) of ERISA provides, in pertinent part, the following:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions
>
> (1) In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C.A. § 1132(g) (West 1985) (emphasis added). The statute clearly states that fee awards under ERISA are matters within the sound discretion of the courts. *E.g.*, *Davidson v. Cook*, 567 F.Supp. 225, 243 (E.D.Va.1983). Federal courts exercising their discretion have made attorneys' fee awards in ERISA cases that have been settled before trial. *See Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587 (9th Cir. 1987). Thus, it appears that in the posture of the present case this Court may now exercise its discretion and determine whether to award attorneys' fees and costs.

Federal judges have developed a five-part test to assist them in exercising their discretion when determining whether it is appropriate to make a fee award to a party in an ERISA case; the courts usually consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith;
>
> (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
>
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
>
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> (5) the relative merits of the parties' positions.

*Davidson v. Cook*, 567 F.Supp. at 242 & n. 33 (following *Iron Workers Local # 272 v.*

*Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 644 F.Supp. 551, 552–552 (D.Md.1986). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Iron Workers Local # 272 v. Bowen*, 624 F.2d at 1266. In particular types of ERISA cases, other factors may be relevant as well. *Id.*

This Court will consider (1) the five factors as they relate to Plaintiffs' petition for attorneys' fees and (2) the five factors as they relate to Defendants' petition for attorneys' fees.

## A. PLAINTIFFS' PETITION FOR ATTORNEYS' FEES

### (1) *The Degree Defendants' Culpability or Bad Faith*

This Court has not detected any bad faith or culpability of any sort on the part of Defendants. Instead, it appears to this Court that Defendants may have honestly felt that they were between a rock and a hard place on the issue of whether they could voluntarily include the unionized employees in the Plan; if Defendants included the unionized employees, they might be accused of "union-busting"; if Defendants did not include the unionized employees, the same result might occur—and, in fact, did occur. This Court has determined that Defendants' fears were without merit or substance and were—in view of the union's acquiescence—illogical, but that does not automatically translate into bad faith or culpable conduct. In addition, this Court is of the opinion that Defendants' voluntary decision to include the unionized employees in the Plan does not—in and of itself—evince a "guilty heart" or prior bad faith. In short, a "smoking gun" regarding Defendants' bad faith or culpability does not appear in the record, and this Court does not believe there is sufficient evidence from which to make an inference regarding Defendants' culpability or bad faith.

Regrettably, both sides engaged in a certain amount of labor-management posturing throughout this case, *see* Def'ts' Peti-

tion for Attorneys' Fees Exhs. 1, 2 (letters to unionized employees regarding lawsuit, both sides taking credit for ultimate result), but no more than is to be expected under the circumstances. Posturing alone does not constitute bad faith or culpable conduct.

### (2) *Defendants' Ability to Satisfy a Fee Award*

Although there is no direct evidence in the record regarding Defendants' ability to satisfy an award of attorneys' fees, it appears that Ruddick Corporation and its subsidiary, Harris–Teeter Super Markets, Inc., are highly successful business entities with sufficient assets and earning power to pay an award of attorneys' fees without enduring serious financial hardship. Defendants do not deny that they have the ability to satisfy an award. Def'ts' Memorandum of Law in Support of Def'ts' Petition for Attorneys' Fees at 11. Thus, this factor weighs in favor of an award of attorneys' fees to Plaintiffs.

### (3) *Deterrence of Other Similarly Situated Persons*

Plaintiffs assert that an award of attorneys' fees in this case will "significantly enhance" the deterrent value of this Court's March 28th Order. This Court is of the opinion that there is nothing—and no one—to deter. As found above, Defendants' actions were not undertaken in bad faith or with any sort of culpability; Defendants simply made a choice regarding the unionized employees' inclusion in the Plan, and that choice appeared to them to be reasonable—and defensible—under the terms of the Plan and the circumstances. This Court never addressed the merits of this case and never determined whether Defendants violated the terms of Plan and ERISA by excluding the unionized employees. Instead, in the March 28th Order this Court simply made technical rulings regarding (1) subject matter jurisdiction under ERISA, (2) the applicable statute of limitations under ERISA, (3) the time when Plaintiffs' ERISA claims should be deemed to have accrued, and (4) standing under ERISA. In making these rulings, this Court did not intend to "send a message" to Defendants or to other similarly situated employers. Indeed, the wrong deterrent message would result if this Court awarded attorneys' fees since employers involved in other ERISA cases might be discouraged from forcefully litigating whatever defenses they might have. Although this Court and other federal courts must be primarily concerned with ERISA's remedial purpose, which is to protect employees' legitimate interests in their benefit plans, attorneys' fees in ERISA cases should not be used as a club to beat employers and plan administrators into submission needlessly.

### (4) *Whether Plaintiffs Sought to Benefit All Participants and Beneficiaries of the Plan or to Resolve a Significant Legal Question Regarding ERISA*

First, Plaintiffs brought the present action to benefit all of the *unionized* employees, but Plaintiffs did not clearly intend to benefit all of the Plan's participants; some of the Plan's participants—indeed the only participants Defendants recognized prior to Plaintiffs' lawsuit—were non-unionized. There is nothing in the record to establish that all of the Plan's participants—unionized and non-unionized—will be better off now that the unionized employees are included in the Plan. Plaintiffs had their own economic interests at heart when they brought this action, and they only considered the economic interests of a class of purportedly similarly situated individuals— the other unionized employees of Defendants. This Court cannot say on the present record that Plaintiffs sought to benefit all of the Plan's participants by bringing the present lawsuit.

Second, Plaintiffs did not bring this lawsuit to resolve a significant legal question regarding ERISA. Plaintiffs maintained from the outset that they should be considered participants under the unambiguous terms of the Plan, and they brought the present suit simply to get the relief they believed they were entitled to receive. Several significant *preliminary* legal questions regarding subject matter jurisdiction,

standing, and the applicable statute of limitations had to be resolved before this Court could reach the merits of Plaintiffs' claims. Yet, Defendants—not Plaintiffs—were responsible for raising the significant preliminary legal questions, all of which arose from Defendants' strenuous attempts to dismiss Plaintiffs' action. Plaintiffs—it must be admitted in all honesty—would have been much happier if these legal questions had never been raised; the action would have been much less complicated, much less expensive, and much less uncertain for Plaintiffs. Of course, Plaintiffs and their attorneys are now jubilant because they have received mostly favorable rulings on these preliminary legal questions. Plaintiffs' attorneys seem especially pleased with the legal results. Plaintiffs, however, did not set out to create precedent; they just wanted to be included in the Plan.

Thus, this factor weighs against an award of attorneys' fees to Plaintiffs.

### (5) *The Relative Merits of the Parties' Positions*

This factor tends to favor Plaintiffs because—all in all—they received favorable rulings on the preliminary legal issues and because they ultimately received the relief they wanted, which was inclusion in the Plan for the unionized employees. On the other hand, it is clear that this Court (1) did not determine the merits of this case, (2) did not have the opportunity to hear all of the evidence on the merits, and (3) did not have an opportunity to hear in detail the parties' respective positions regarding the merits.

Nevertheless, from the record, this Court is of the opinion that Plaintiffs had a very strong position regarding who should be included in the Plan. Amendment No. 2 to the Plan, which is the current version, defines "participant" as any employee "who is included in the Plan pursuant to Article III" of the Plan. (Harkavy Aff., Exh. A, Plan Amendment No. 2, § 2.15). Article III of the Plan, as amended, provides, in pertinent part, the following:

3.1 *Requirements for Participation*

(a) A person who is not already a Participant shall become a participant on the first January 1 on which he or she meets all of the following eligibility requirements:

(i) The individual is an Employee of the Employer;

(ii) On or before September 30 of the preceding calendar year, the individual completed a qualifying year of service . . .;

(iii) The individual is not a nonresident alien; [and]

(iv) The individual is not a member of a unit which is covered by a collective bargaining agreement (unless the agreement provides for his or her participation in this Plan).

(Harkavy Aff., Exh. A, Plan Amendment No. 2, § 3.1). This Court is of the opinion that these provisions of the Plan, taken together, strongly indicate that the unionized employees—who did not have a collective bargaining agreement with Defendant Harris–Teeter Super Markets, Inc., or Defendant Ruddick Corporation—should have been included in the Plan. The preliminary assertions Defendants made regarding this issue were not very convincing. Thus, this Court concludes that Plaintiffs' position on the merits was much stronger and more convincing than Defendants' position.

A much closer question is presented regarding the parties' respective positions on the preliminary legal questions addressed by this Court in the March 28th Order. The subject matter jurisdiction issue was, and still is, a very difficult question. The parties presented very strong, well-reasoned, opposing positions. This Court's decision on the subject matter jurisdiction issue was not the only possible decision; other jurists may well decide the issue differently. The other preliminary legal questions—standing and the statute of limitations—were much less difficult, but the parties managed to provide excellent arguments on both sides. Neither side had a clearly superior legal position on the preliminary questions.

In short, this factor—the respective merits of the parties' positions—slightly

weighs in favor of an attorneys' fee award to Plaintiffs because Plaintiffs' position on the merits was, and is, much stronger than Defendants' position. On the other hand, the parties were about even in terms of merit on the preliminary legal questions.

Taking these five factors together, this Court is of the opinion that Plaintiffs should not receive an award of attorneys' fees.

## B. DEFENDANTS' FEE PETITION

### (1) The Degree Plaintiffs' Culpability or Bad Faith

This Court has not detected any bad faith or culpability of any sort on the part of any of the Plaintiffs. This factor does not weigh in favor of an award of attorneys' fees to Defendants.

### (2) Plaintiffs' Ability to Satisfy a Fee Award

Although there is no direct evidence in the record regarding Plaintiffs' ability to satisfy an award of attorneys' fees, it appears that the union is a large and well-financed union, which may well be capable of satisfying any award of reasonable attorneys' fees. Thus, this factor weighs in favor of an award of attorneys' fees to Defendants.

### (3) Deterrence of Other Similarly Situated Persons

Defendants contend that an award of attorneys' fees "will deter other [u]nions from relitigating collective bargaining issues properly presented to the National Labor Relations Board" and "will deter unions from bringing actions, properly brought by employees as individuals, in the name of the union[,] to gain a bargaining advantage over management." Defendants' contentions on this point are without merit. An award to Defendants would only serve to deter individual employees seeking to enforce their rights under plans covered by ERISA. As for other unions, at least in this district they should now realize that they are not proper parties to sue under Section 502 of ERISA, 29 U.S.C. § 1132; no further deterrence is necessary.

### (4) Whether Defendants Sought to Benefit All Participants and Beneficiaries of the Plan or to Resolve a Significant Legal Question Regarding ERISA

Defendants, obviously, did not seek to benefit "all participants and beneficiaries of the Plan"; instead, Defendants sought to exclude the unionized employees from the Plan and refused to allow them to participate in the absence of a collective bargaining agreement providing for such participation. Defendants did raise significant legal questions regarding ERISA, and for this they should receive some credit. Thus, this factor tends to weigh slightly in Defendants' favor because they presented such a vigorous and well-reasoned defense.

### (5) The Relative Merits of the Parties' Positions

This Court's discussion on this factor in the section above regarding Plaintiffs' fee petition can be applied with equal force here: Plaintiffs' position on the merits was, and is, much stronger than Defendants' position, but, on the other preliminary legal questions, the parties were about even in terms of merit. Thus, this factor weighs against an award of attorneys' fees to Defendants.

Taking these five factors together, this Court is of the opinion that Defendants should not receive an award of attorneys' fees.

## C. CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED that:

(1) Plaintiffs' Petition for Attorneys' Fees and Costs, filed May 26, 1989, shall be, and hereby is, DENIED; and (2) Defendants' Petition for Attorneys' Fees, filed May 26, 1989, shall be, and hereby is, DENIED.